Francis L. SCRANTON and Margaret E. Scranton, Appellants (Defendants below),

v.

E. Jean WHITLOCK, Appellee (Plaintiff below).

No. 3206.

Supreme Court of Wyoming.

March 11, 1964.

John T. Dixon, Powell, and Steadman & Steadman, Cody, for appellants.

J. D. Fitzstephens of Goppert & Fitzstephens, Cody, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Plaintiff brought an action to quiet title to residence property in Powell, Wyoming. Defendants answered that they claimed an interest in the property, setting up an affirmative defense and alleging in a counterclaim that on January 30, 1958, the Whitlocks, husband and wife, had executed a promissory note for $51,000 to the Scrantons, husband and wife, and to secure it had given a mortgage on the property in question on which some $6,000 had subsequently been paid, leaving a balance of approximately $45,000 due and owing, and that on March 2, 1962, the realty had been set over in a divorce case to Mrs. Whitlock as her sole property. Defendants then prayed judgment on the counterclaim for the balance due and owing and interest thereon, as well as attorney's fees, and asked for the foreclosure of the mortgage. Plaintiff answered the counterclaim, stating that the note and mortgage had been executed in accordance with an agreement (which was attached) concerning the sale and operation of a retail liquor establishment and that the agreement was illegal and void as against public policy. At the pretrial conference the mentioned instruments were recognized and admitted, and the facts concerning the entire transaction stipulated. The court later heard the case upon these stipulations and found and decreed the agreement, mortgage deed, and note to be illegal, void, and unenforceable—without mentioning in the judgment the quieting of title in the plaintiff as she

had requested. From the judgment the defendants have appealed.

In brief, the facts were that the Scrantons had wanted to sell the retail liquor establishment and the Whitlocks to buy it. The Whitlocks had to finance the purchase, and as security for their purchase note they executed the mortgage to the mentioned real estate. They went into immediate possession of the establishment and for awhile made their payments in accordance with the agreement. At all times that the Whitlocks were in possession of the bar the license to operate was in the name of the Scrantons, with the exception of the license for the year 1962–63, when it was issued in the names of both the Whitlocks and Scrantons, for which year the Scrantons paid the license fee of $1,520 to the City of Powell, and Gerald A. Whitlock executed a promissory note for the amount. On March 2, 1962, the mortgaged real estate was by court order in a divorce proceeding set over to Mrs. Whitlock. On July 2, 1962, Whitlock, who had taken the bar as a share of the divorce settlement, told defendants, "Here's the key to the place. I am through," whereupon the Scrantons resumed possession and operation of the bar and have continued the business.

The propriety of the judgment depends upon the validity of the basic agreement between the parties in the light of the relevant statutory provisions concerning licenses for the sale of intoxicating liquor in the State of Wyoming. Plaintiff's contention is succinct, that the agreement between the parties is illegal and void because it provided that the liquor license would remain in the sellers' names while the operation and beneficial ownership of the business would belong to the borrowers, and that accordingly the mortgage was also void.

### Statutes

Section 12–13, W.S.1957, provides:

"A license shall be a personal privilege * * * provided * * *

that the owner of such license * * * by an actual bona fide sale to be made in good faith, may, * * * assign and transfer such license * * * subject to the condition * * * that such assignee or transferee shall first make and file a sworn application showing the qualifications of such person or assignee or transferee to take and hold a retail liquor license as required by * * * [§ 12–9] * * * all subject to the approval of the governing body authorized to grant such retail liquor license first had and obtained * * *.

"Except as above provided, no license shall be transferred or sold, nor shall it be used for any place not described * * *."

Section 12–1, W.S.1957, provides for the regulation of the traffic in spirituous, fermented, and malt liquors, and prohibits sales at retail except in compliance with the statutes. Section 12–9, W.S.1957, relates to the application for retail liquor licenses generally and inter alia provides the matters which shall be included in the sworn statement of an application. Section 12–35, W.S.1957, states:

"Any person, who shall violate any provisions of this act, for which violation no specific penalty is provided, shall be deemed guilty of a misdemeanor and * * * shall be fined not more than five hundred dollars ($500.00) to which may be added imprisonment for a period not exceeding twelve months."

Plaintiff argues that any agreement to conduct a business in violation of express statutes is illegal and void, citing MacDougall v. Board of Land Com'rs of State of Wyoming, 48 Wyo. 493, 49 P.2d 663, and other Wyoming cases for that principle. She quotes 30 Am.Jur. Intoxicating Liquors § 150:

"A liquor license is a personal privilege, and the law prohibits the holding of such a license by one person in the interest of others, as a matter of

public policy. Particularly this is true, since the statutes making provision for applications for liquor licenses generally presuppose that the person making the application will be the true owner thereof and will not, in fact, be acting for another who is undisclosed."

and urges that 48 C.J.S. Intoxicating Liquors § 109 is to the same effect, insisting further that Whitesides v. Council of City of Cheyenne, 78 Wyo. 80, 319 P.2d 520, reaffirms the fact that a liquor license in this State is a personal privilege.

The mentioned statutes if interpreted reasonably would seem to preclude the operation of a retail liquor business in the State by one person when the license to that business is in the name of another and the question has not heretofore been presented to us. We look then to see if decisions in other jurisdictions have thrown any light on the subject. Defendants cite no cases directly in point, and they may be excused for not so doing since the Wyoming statutes concerning the handling of intoxicating liquors are unique and as far as we are able to ascertain do not exist elsewhere. In that connection, the cases of Stallinger v. Goss, 121 Mont. 437, 193 P.2d 810, and Sears v. Barker, 126 Mont. 101, 244 P.2d 516, are of little assistance since the Montana statutes relating to liquor licenses are wholly dissimilar to those in Wyoming. Moreover, those decisions are quoted merely for the rule that a retail liquor license is personal property and which determination, incidentally, was made under a statute providing, "Every kind of property that is not real is personal." Section 6672, R.C.Mont.1935.

Defendants place great reliance upon Deggender v. Seattle Brewing & Malting Co., 41 Wash. 385, 83 P. 898, 4 L.R.A., N.S., 626, quoted in Hom Moon Jung v. Soo, 64 Ariz. 216, 167 P.2d 929, 931, stating, 83 P. at 899:

"* * * But where the statute recognizes the right of transfer from one to another, and where the right is a valuable right, capable of being surrendered and reduced to money, a different rule prevails. In such cases the license or right to do business becomes a valuable property right, subject to barter and sale. It is property with value and quality. * * * This, it seems in reason, must be the correct rule. If a license to sell liquors is tranferable, valuable, and is subject to sale, it is certainly not merely a personal privilege, but it has all the attributes of property, except tangibility, and must be treated as property. * * *"

The reference is without force. The Deggender case is concerned with the transfer of a liquor license issued by a city under a statute which gives the city sole and exclusive authority to regulate the sale of intoxicating liquors by issuance of a prescribed license. The city there had an ordinance providing for a transfer of an unexpired license upon the observance of certain formalities about which there was no practical difficulty in the case. The court held that the license was more than a personal privilege and was valuable personal property, but did not purport to say that a transfer attempted without the consent of the city authorities would have been legal.

In the Hom Moon Jung case, the court was careful to compare the circumstances there with other situations of facts wherein the transferee had agreed to make application for the transfer in the manner and form required by the issuing authorities. More importantly, numerous later decisions in Arizona express a view diametrically opposed to the Scrantons' contention. In Clark v. Tinnin, 81 Ariz. 259, 304 P.2d 947, 949–950, it was said:

"* * * The general rule in the United States prohibits the holding or acquisition of a liquor license by one person in the interest of others as being contrary to public policy. [Citing authorities.] Our statutes reflect this general policy in that they provide

that the applicant must have the statutory qualifications and be approved by the Superintendent of the Department of Liquor Licenses and Control. Any agreement which provides that one party will secure a license and hold it for the benefit of an undisclosed party who has not submitted himself and his qualifications to the scrutiny of the Superintendent contravenes the public policy of this state and is therefore invalid and unenforceable."

This philosophy was approved in Myerson v. Myerson, 88 Ariz. 385, 357 P.2d 133, and Kalastro v. Duncan, 90 Ariz. 122, 366 P.2d 684.

██ Defendants themselves quote an encyclopedic statement which we think is peculiarly applicable here:

"A license to sell liquor, being a mere personal privilege, is generally held not to be assignable or transferable, except where a statute so provides, and then only in the manner and form prescribed. * * *" 30 Am.Jur. Intoxicating Liquors § 167.

The conditions imposed by § 12–13, i. e., the approval of the governing body authorized to grant the license, were not met and thus the parties clearly violated the statute. For this reason, the trial court was justified in holding that the note and mortgage given by plaintiff and her husband to defendants were illegal, void, and unenforceable.

██ Whether or not the placing of the Whitlocks' names on the license which was issued for the year 1962–63 affected the validity of the transaction according to the record was not before the trial court and has not been argued here. The same is true as to any question of estoppel of defendants to raise the invalidity and as to any election by the Scrantons to waive their interest in the secured property by repossessing the business. An appellate court cannot be expected to prosecute an independent inquiry for errors upon which

an appellant may possibly rely and may invoke abandonment or waiver. State Highway Commission v. Triangle Development Co., Wyo., 369 P.2d 864, 371 P.2d 408; Wyuta Cattle Co. v. Connell, 43 Wyo. 135, 299 P. 279, 3 P.2d 101.

Affirmed.