[Civil No. 4223.   Filed July 1, 1940.]

[103 Pac. (2d) 952.]

ALFRED· C. STANTON and FILMORE C. STANTON, Doing Business as CLIFTON ICE COMPANY, a Copartnership, and ARIZONA BEVERAGE INDUSTRIES ASSOCIATION, INC., a Corporation, Petitioners, v. THE SUPERIOR COURT OF ARIZONA IN AND FOR GRAHAM COUNTY; JESSE A. UDALL, Judge of Said Court; C. C. FAIRES, Presiding Judge of Said Court; CLEVE CURTIS, Clerk of Said Court; J. P. METZ, Superintendent of Liquor Licenses and Control of the State of Arizona; and M. R. PATTON, Doing Business as VALLEY DISTRIBUTING COMPANY, Respondents.

Mr. Frank W. Beer and Mr. Wm. G. Christy, for Petitioners.

Mr. Benjamin Blake for Respondent Patton.

LOCKWOOD, J.—On September 26, 1939, M. R. Patton, hereinafter called respondent, doing business as the Valley Distributing Company in Safford, Arizona, filed with J. P. Metz, superintendent of liquor licenses and control of the state of Arizona, hereinafter called the superintendent, an application for a wholesale liquor license permitting him to establish a place of business for the sale of distilled liquors, wines and beers in Safford, Arizona; also permitting him to sell them throughout Arizona.

A hearing on the application was held, respondent being present in person and by counsel, and Alfred C. Stanton and Filmore C. Stanton, doing business as Clifton Ice Company, a copartnership, and Arizona Beverage Industries Association, Inc., a corporation, hereinafter called petitioners, also being present in person and by counsel, resisting the granting of such application on the ground, among others, that it would not serve public convenience or necessity. Witnesses were sworn and testified on behalf of both petitioners

and respondent, and eventually the superintendent granted the application. Within ten days after such granting petitioners filed an appeal to the superior court of Graham county, and evidence being introduced, the matter was then taken under advisement. Judgment was finally entered affirming the action of the superintendent, whereupon it was brought before this court for review on *certiorari*.

The question before us is as to the extent of the right of the superintendent to grant licenses for the sale of intoxicating liquor. It is agreed that so far as this case is concerned, it is governed by section 8, chapter 64, Session Laws of 1939. This chapter is an attempt to establish a complete general code regulating the sale of intoxicating liquor in Arizona. The particular portion of the section involved reads as follows:

"Sec. 4c. *Issuance Of Licenses.* (a) The superintendent shall issue a spirituous liquor license only upon satisfactory showing of the capability, qualifications, and reliability of the applicant, *and that the public convenience requires and will be substantially served by such issuance.*" (Italics ours.)

Petitioners argue both extensively and intensively that the state has very broad powers in the regulation of the sale of liquor, and this is not disputed by respondent. The general rule on this subject was laid down fifty years ago by the Supreme Court of the United States, in *Crowley* v. *Christensen,* 137 U. S. 86, 11 Sup. Ct. 13, 15, 34 L. Ed. 620, as follows:

" . . . It is a question of public expediency and public morality, and not of federal law. The police power of the state is fully competent to regulate the business, to mitigate its evils, or to suppress it entirely. There is no inherent right in a citizen to thus sell intoxicating liquors by retail. It is not a privilege of a citizen of the state or of a citizen of the United States. As it is a business attended with danger to the com-

munity, it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rest in the discretion of the governing authority. That authority may vest in such officers as it may deem proper the power of passing upon applications for permission to carry it on, and to issue licenses for that purpose. It is a matter of legislative will only. As in many other cases, the officers may not always exercise the power conferred upon them with wisdom or justice to the parties affected. But that is a matter which does not affect the authority of the state, or one which can be brought under the cognizance of the courts of the United States.''

And the same rule is now universally accepted as extending to the sale or use of intoxicating liquors in any manner. It has been approved by this court in the case of *Gherna* v. *State,* 16 Ariz. 344, 146 Pac. 494, Ann. Cas. 1916D 94, and has never, so far as we know, been seriously questioned by any court. The only question for us then is, what did the legislature of Arizona intend by subdivision 4c (a), *supra?*

It is urged by petitioners that the legislature intended to establish as the controlling principle in the issuance of liquor licenses the system of regulated monopoly, which we have previously stated was intended by it to govern public utilities. *Corporation Com.* v. *People's Freight Line, Inc.,* 41 Ariz. 158, 16 Pac. (2d) 420; *Arizona Corporation Com.* v. *Hopkins,* 52 Ariz. 174, 79 Pac. (2d) 946. If this be true, it logically follows that the requirements that a license shall only be issued when ''the public convenience requires and will be substantially served by such issuance'' would prohibit, in effect, the issuance of a new license when it appeared that the concerns already holding licenses were ready, willing and able to supply the demand which existed in the community served. Was it then the intent of the legislature to apply to

liquor dealers the same principles which we held in the cases above cited it had applied to public utilities, and which holding we must presume to be correct because, with ample opportunity to change the rule thus declared, the legislature has consistently refused to do so.

In the case of *Corporation Com.* v. *People's Freight Line, Inc., supra,* we pointed out that there have been two theories prevalent regarding the best method of regulating such businesses as are held to be subject to regulation in the interest of public necessity and convenience, the one being restricted competition and the other regulated monopoly. We also pointed out the reason why, so far as public utilities were concerned, the general tendency of legislation has been away from the rule of restricted competition, which was at first followed, and in the direction of regulated monopoly. It is obvious that the reasons for regulated monopoly applicable to public utilities do not apply with the same force and effect in an industry like the liquor business, and why the legislature might well believe that restricted competition was more in the interest of public necessity and convenience.

The language of the successive acts regulating this business, including the last expression of the legislative will in chapter 64, *supra,* indicates to us that the legislature did not intend to establish a regulated monopoly in that business, but preferred rather to continue the competitive system so long in vogue in the United States, under such regulations as might be from time to time established by the law-making bodies. This being the case, the mere fact that other reputable institutions holding existing liquor licenses might be ready, willing and able to serve properly the district in question does not, as in the case of public utilities, prohibit the licensing authorities from issuing other licenses valid in the same territory. It is a matter

of discretion in the licensing body, subject, of course, to review for abuse, but the mere fact that other existing licensees can render adequate service does not in and of itself deprive the superintendent of jurisdiction to issue a new license.

The superintendent and the superior court of Graham county undoubtedly applied this rule of law to the situation before them in the present case, and we cannot say from the record they abused their discretion or exceeded their jurisdiction.

The writ of *certiorari* heretofore issued is quashed.

ROSS, C. J., and McALISTER, J., concur.